1  Mary R, O'Grady, 011434
   Kristin L. Windtberg , 024804
2  Joshua J. Messer, 035101
   OSBORN MALEDON, P.A.
3  2929 North Central Avenue, 21st Floor
   Phoenix, Arizona 85012-2793
4  (602) 640-9000
   mogrady@omlaw.com
5  kwindtberg@omlaw.com
   jmesser@omlaw.com
6
   Attorneys for Defendants Arizona Board of Regents, Dr. Kimberly
7  Day, Dr. Salina Bednarek and Joshua Bednarek,
   Dr. Margaret Morris and Phillip Morris, Candace
8  Keck and Jonathan Keck

9

10              IN THE UNITED STATES DISTRICT COURT

11                 FOR THE DISTRICT OF ARIZONA

12  Sara Do, an individual,                    No. CV-22-00190-PHX-JJT

13                    Plaintiffs,               **DEFENDANTS ARIZONA BOARD**
                                                **OF REGENTS, KIMBERLY DAY,**
14  v.                                          **SALINA BEDNAREK AND JOSHUA**
                                                **BEDNAREK, MARGARET MORRIS**
15                                              **AND PHILLIP MORRIS AND**
16  Arizona Board of Regents, an Arizona        **CANDACE KECK AND**
    State Entity; Maricopa County Special       **JOHNATHAN KECK'S MOTION TO**
17  Health Care District; Dr. Kimberly Day,     **DISMISS FIRST AMENDED**
    an unmarried person; individually and in    **COMPLAINT**
18  her official capacity; Dr. Salina Bednarek,
    individually and in her official capacity,
19  and Joshua Bednarek, wife and husband;
    Dr. Margaret Morris, individually and in    **(Oral Argument Requested)**
20  her official capacity, and Phillip Morris,
    wife and husband; Candace Keck,
21  individually and in her official capacity,
    and Jonathan Keck, wife and husband,
22
23                    Defendants.
24
25
26
27
28

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants Arizona Board of Regents ("ABOR")[1]; Dr. Kimberly Day; Dr. Salina Bednarek and Joshua Bednarek; Dr. Margaret Morris and Phillip Morris; and Candace Keck and Jonathan Keck, (the "Individual Defendants") (collectively the "University Defendants") move to dismiss all claims asserted against them in Plaintiff Sara Do's First Amended Complaint (Doc. 14) ("FAC").[2]   This complex compilation of federal and state claims against multiple parties is the result of Do receiving a failing grade in a class she took at Arizona State University ("ASU").  Do's claims against the University Defendants fail for a variety of reasons and should be dismissed with prejudice.

All of the claims against these defendants (Claims 1, 3-4, 6-13) are barred by Do's failure to exhaust administrative remedies.  The Eleventh Amendment bars, with only slight exception, all of Do's claims under the Americans with Disabilities Act ("ADA") (Claims 1 and 3), and all of her state law claims (Claims 4, 7-13) as to ABOR and the Individual Defendants in their official capacities.

Additionally, several of Do's claims fail as a matter of law.  Do's claim under the Arizonans with Disabilities Act ("AzDA") (Claim 4) fails because ASU is not a place of public accommodation.  Do's defamation claim (Claim 10) fails because it relies on a course evaluation that is not capable of defamatory intent.  Do's breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract claims (Claims 11-13) fail because Do cannot point to a breach of a specific contractual provision between her and ABOR that has been breached.

In addition, the Individual Defendants should be dismissed from Do's ADA retaliation claim (Claim 3) and her Rehabilitation Act claim (Claim 6) because those claims are duplicative of her claims against ABOR.  Similarly, the Individual Defendants

---

[1]      Pursuant to A.R.S. § 15-1625, ABOR is the proper party when a litigant complains of conduct of one of Arizona's public universities, including Arizona State University. *See Lazarescu v. ASU*, 230 F.R.D. 596, 601 (D. Ariz. 2005).

[2]      At time of filing, the parties' Joint Motion and Request to Exceed Page Limits (Doc. 15) was pending before the Court.  This motion was submitted pursuant to the page limits contemplated in that motion.

should be dismissed from Do's negligence claim (Claim 9) because the Individual Defendants did not owe Do a duty.  Finally, Do's request for punitive damages should be dismissed.

## FACTUAL BACKGROUND

Do received a failing grade in a class in a masters-level nursing program at Arizona State University.  (FAC ¶ 2.)[3]  Her program of study required that she complete a certain number of clinical hours in order to gain the hands-on experience necessary to become a nurse.  (*Id.* ¶ 40-41.)  Do did not complete her clinical assignment.  (*Id.* ¶¶ 50-52.)  She attributes her failure to complete her clinical assignment to a heart condition and the stress of her clinical assignment.  (*Id.*)  After she failed to complete her assigned clinical, she received a negative evaluation and was given a failing grade for the clinical course.  (*Id.* ¶¶ 52, 55.)  She also asserts that she "was constructively removed" from the nursing program as a result of the negative evaluation that she received in the clinical course.  (*Id.* ¶ 55.)  Do's failing grade in this course was approved by several levels of ASU faculty and administrators.  (*Id.* ¶ 58.)

Through this lawsuit, based on these incidents related to her failing grade in a clinical course, Do now seeks more than $15 million dollars in compensatory damages from the Board of Regents and various university employees as well as punitive damages and other relief regarding her education at ASU.  For the reasons set forth in the Motion, her lawsuit should be dismissed.

## ARGUMENT

**I.    Do's failure to exhaust her administrative remedies bars all of her claims against the University Defendants.**

Do alleges she received an unjustified course evaluation and failing grade that forced her out of the ASU Master of Nursing Program.  (FAC ¶¶ 12, 55-56.)  Do challenged the evaluation and grade through ASU's grievance process (*id.* ¶ 56), and ASU

---

[3]    As required at this phase of the litigation, this Motion accepts the FAC's factual allegations as true.  If this case proceeds beyond this Motion, the University Defendants will vigorously dispute the accuracy of many of the allegations in the FAC.

1   upheld the failing grade (*id.* ¶ 58.)  Do now seeks to address her grievance through this
2   lawsuit.  However, under Arizona law, Do was first required to appeal ASU's decision to
3   an Arizona superior court.  Her failure to do so bars all of her claims against the University
4   Defendants here.

5       "Under Arizona law, a party's failure to appeal a final administrative decision
6   makes that decision final and *res judicata*."  *Olson v. Morris*, 188 F.3d 1083, 1086 (9th
7   Cir. 1999).  Thus, "[i]n Arizona, the failure to seek judicial review of an administrative
8   order precludes collateral attack of the order in a separate complaint," and "[i]f no timely
9   appeal is taken, the decision of the board is conclusively presumed to be just, reasonable,
10  and lawful."  *Id.* (citation and internal quotation marks omitted); *see also Quade v. Ariz.*
11  *Bd. of Regents*, No. CV-15-00610-PHX-JJT, 2015 WL 10939902, *3-4 (D. Ariz. 2015)
12  (precluding federal claims because of plaintiff's failure to appeal university's
13  administrative decision) *aff'd Quade v. Ariz. Bd. of Regents*, 700 F. App'x 623 (9th Cir.
14  2017).  This preclusive effect applies to any claim, including those sounding in tort, that
15  would turn on the underlying administrative decision being improper.  *Gilbert v. Ben-*
16  *Asher*, 900 F.2d 1407, 1411 (9th Cir. 1990) (applying Arizona law and barring claims for
17  failure to exhaust because they were a "collateral attack on the administrative decision . .
18  . under the guise of a complaint sounding in tort").  This principle extends to "alleged
19  constitutional errors that might have been corrected on proper application to the court
20  which has jurisdiction of the appeal," *Quade,* 2015 WL 10939902 at *3, as well as federal
21  statutory claims such as Title II of the ADA and the Rehabilitation Act, *Day v. Minnesota*,
22  No. 05-2675, 2007 WL 4321999, *8-9 (D. Minn. 2007) (holding an ADA claim barred
23  by state administrative review scheme and gathering cases holding same).

24      ABOR "is an agency subject to Arizona's Administrative Review Act."  *Ernst v.*
25  *Ariz. Bd. of Regents*, 579 P.2d 1099, 1101 (Ariz. 1978).  Thus, when a student is
26  dissatisfied with a decision by ASU or ABOR, their "further efforts to get a satisfactory
27  ruling should be under the Administrative Review Act."  *Ariz. Bd. of Regents v. Harper*,

28

495 P.2d 453, 459 (Ariz. 1972).  That Act requires appeal of the administrative decision to superior court.  A.R.S. §§ 12-904, -905; *see also Quade*, 2015 WL 10939902 at *3.

In the FAC, Do alleges she "challenged her failing grade through ASU's formal grievance process."  (FAC ¶ 56.)  She further alleges that she has completed "each stage of the formal grievance process," and that ASU has "formally upheld the decision to issue her a failing grade and to constructively remove her from the program."  (*Id*. ¶ 58.)  However, Do did not appeal the grievance decision to superior court, as required by A.R.S. §§ 12-904, -905, and does not allege that she did so.  (*Id*. ¶ 58.)  Instead, she filed this lawsuit in federal court as a collateral attack on that decision.  Do's claims here arise out of the same facts underlying the grievance process.  The alleged failure to accommodate Do's claimed disability, Do's placement in the Valleywise clinical, the course evaluation, and the failing grade were all a part of, and formed the basis for, Do's grievance.  (*See, e.g.*, FAC ¶¶ 10, 52-57.)  Do's failure to appeal ABOR's decision to the superior court renders that decision "conclusively presumed to be just, reasonable[,] and lawful."  *Olson*, 188 F.3d at 1086.  As such, ABOR's decision is now *res judicata* and bars Do's claims.  All of Do's claims against the University Defendants (Claims 1, 3-4, 6-13) should therefore be dismissed with prejudice.

## II.     The Eleventh Amendment bars Do's Claims 1, 3, 4, and 7-13.

Do's claims under the ADA and her state law claims against the University Defendants must be dismissed for the additional reason that they are precluded by Eleventh Amendment immunity.  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  While the Eleventh Amendment, by its terms applies only to suits against a state by citizens of other states, the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own [s]tates."  *Id*.  Eleventh Amendment immunity extends to "state instrumentalities."  *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir.

2018).  "ABOR is an arm of the State of Arizona for Eleventh Amendment purposes." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). Additionally, "[a]n official sued in in his official capacity has the same immunity as the state, and is entitled to Eleventh Amendment immunity." *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992).

> This sovereign immunity is subject to limited exceptions:
> First, a state may waive its Eleventh Amendment defense. . . . Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. . . .  Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks ... prospective injunctive relief."

*Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817-18 (9th Cir. 2001).

A. **Eleventh Amendment immunity bars Do's state law claims against ABOR and the Individual Defendants in their official capacities (Claims 4, 7-13).**

"[T]he Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541 (2002).  A state "does not consent to suit in federal court merely by consenting to suit in the courts of its own creation," by "merely stating . . . its intention to sue and be sued," or "even by authorizing suits against it in any court of competent jurisdiction." *See Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (internal citations and quotation marks omitted).  Absent a "clear declaration" that a state has waived its Eleventh Amendment immunity, state law claims against states as such are barred in federal court.  *Id*. at 680.

Arizona and its instrumentalities have not consented to federal jurisdiction over state law claims.  *Redgrave v. Ducey*, 493 P.3d 878, 883, ¶ 21 (Ariz. 2021).  As the Ninth Circuit has noted that there is "no indication . . . that Arizona intended to consent to anything more than suit in its own courts."  *Ronwin v. Shapiro*, 657 F.2d 1071, 1073-74 (9th Cir. 1981) That lack of consent bars Do's state law claims against ABOR.  *Coll. Sav.*

1   *Bank*, 527 U.S. at 676.   Do's state law claims against ABOR (Claims 4, 7-13) must
2   therefore be dismissed.

3       Do's claims against the Individual Defendants in their official capacities are also
4   precluded by Eleventh Amendment immunity, because "an official sued in his official
5   capacity has the same immunity as the state." *Pena*, 976 F.2d at 473; *see, e.g.,*
6   *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012) (affirming dismissal of
7   state law claims against individual employees in their official capacities based on
8   *Raygor*).   Moreover, there are no *Ex Parte Young* concerns as to the state law claims
9   because "when a plaintiff alleges that a state official has violated *state* law[,] . . . the entire
10  basis for the doctrine of *Young* and *Edelman* disappears." *Pennhurst v. State Sch. & Hosp.*
11  *v. Halderman*, 465 U.S. 89, 106 (1984).   Do's state law claims against the Individual
12  Defendants in their official capacities (Claims 7-10, 13) must therefore be dismissed.

13
14      **B.    Eleventh Amendment immunity bars Do's ADA claims (Claims 1 and
            3) because Congress did not validly abrogate Arizona's Eleventh
            Amendment Immunity for those claims.**

15
16      The Eleventh Amendment also bars Do's ADA claims (Claims 1 and 3).   Arizona
17  has not waived its sovereign immunity to ADA claims.  *See Redgrave*, 493 P.3d at 883-
18  85, ¶¶ 20, 26-27.   For ABOR to be liable under the ADA, then, Congress must have
19  validly abrogated Arizona's Eleventh Amendment immunity for the claims at issue here.
20  Congress has not done so.

21          1.  Title II of the ADA is not a valid abrogation of sovereign immunity in
                this context.

22      Under the Eleventh Amendment, nonconsenting States may not be sued by private
23  individuals in federal court. *Garrett*, 531 U.S. at 363.   Congress may abrogate this
24  guarantee only when it "both unequivocally intends to do so and acts pursuant to a valid
25  grant of constitutional authority." *Id.*   The Supreme Court has recognized that Title II of
26  the ADA contains an "unequivocal expression of Congress's intent to abrogate state
27  sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 154 (2006).  However, the

28

Supreme Court has found that Title II is a valid abrogation of state sovereign immunity only in certain circumstances. *Id.* at 159. Do's claims do not implicate those circumstances, and as such, her Title II claim (Claim 1) is barred by the Eleventh Amendment and should be dismissed.

To evaluate whether Title II validly abrogates Eleventh Amendment immunity, courts must conduct a three-step test that examines:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 152. This analysis is conducted on a "claim-by-claim" basis. *Id.*; *see also Kohn v. State Bar of Cal.*, 497 F.Supp.3d 526, 535 (N.D.Cal. 2020) ("In the wake of *Georgia* and *Lane*, courts have engaged in a case-by-case analysis to determine whether a fundamental right is at issue and whether Title II validly abrogates sovereign immunity.").

The first step in the *Georgia* analysis is identifying the conduct that allegedly violates Title II. Here, Do alleges that the University Defendants violated Title II by "failing to provide reasonable accommodations," altering her "schedules and requirements to prevent her from completing the program on the basis of her disability," denying her the "benefit of the advanced degree she was in the process of earning," and "constructively removing her from the Masters of Nursing Program." (FAC ¶ 65.)

Assuming, for purposes of this motion, that this alleged conduct violates Title II, step two of the *Georgia* analysis examines "to what extent" the misconduct alleged "also violated the Fourteenth Amendment." *Georgia*, 546 U.S. at 159. Do has not alleged a Fourteenth Amendment violation here, nor has she alleged any conduct by the University Defendants that independently violates the guarantees of § 1 of the Fourteenth Amendment.

Because Do has not alleged conduct that violates the Fourteenth Amendment, the analysis moves to step three of the *Georgia* test. To succeed at step three, Do must

demonstrate that "Congress's purported abrogation of sovereign immunity as to" the conduct she alleges "is nevertheless valid." *Georgia*, 546 U.S. at 159. As the Supreme Court has explained, "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Garrett*, 531 U.S. at 364 (citation and internal quotation marks omitted). "As a result, . . . Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power." *Id*. "Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 [of the Fourteenth Amendment] by enacting 'appropriate legislation.'" *Id*. at 365. Where Congress passes legislation pursuant to § 5 of the Fourteenth Amendment that reaches "beyond the scope of § 1's actual guarantees," that legislation "must exhibit congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id*. (citation and internal quotation marks omitted). "Accordingly, the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id*. at 364.

Whether Title II of the ADA is "appropriate § 5 legislation" requires examining the "particular services at issue in the case." *Guttman v. Khalsa*, 669 F.3d 1101, 1117-18 (10th Cir. 2012). Those "particular services" are assessed against "the nature of the constitutional right at issue . . . the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations," and "whether the congressional statute is congruent and proportional to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." *Id.* at 1117.

Although a "survey of Supreme Court cases fails to reveal precisely what it means for legislation to be congruent and proportional," there is "a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity." *Id.* at 1121-22. Nothing in Do's FAC implicates

a fundamental right or a suspect class. "[I]ndividuals with disabilities do not qualify as a 'suspect class' of persons under the Equal Protection Clause of the Fourteenth Amendment." *Serrano v. Francis*, 345 F.3d 1071, 1079 n.6 (9th Cir. 2003). Further, there is no right to attend ASU under either Arizona or federal law. *Unknown Party v. Ariz. Bd. of Regents*, 2019 WL 7282077, *10 (D. Ariz. 2019) ("Doe does not have a clearly established right, under Arizona law, to attend ASU."); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution."). And "[t]here is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purposes of invoking strict scrutiny." *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 n.2 (9th Cir. 1985). Moreover, the Supreme Court has long recognized that nursing programs often need to impose certain physical requirements on students. *See Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 414 (1979) ("[W]e hold that there was no violation of § 504 when Southeastern concluded that respondent did not qualify for admission to its program. Nothing in the language or history of § 504 reflects an intention to limit the freedom of an educational institution to require reasonable physical qualifications for admission to a clinical training program."). Where, as here, the Court is "presented with a right that is not fundamental" and there is "little evidence of a widespread pattern of irrational state discrimination," "Title II is so out of proportion to a supposed remedial or preventative object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Guttman*, 669 F.3d at 1124 (internal quotation marks and citation omitted).

Here, Do has alleged no "*actual* violations" of a constitutional right, *Georgia*, 546 U.S. at 158. Further, "Title II is so out of proportion to a supposed remedial or preventative object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Guttman*, 669 F.3d at 1124 (internal quotation marks and citation omitted). As such, Title II is not a valid abrogation of ABOR's Eleventh

1    Amendment immunity in this case. *Kohn*, 497 F.Supp.3d at 538 ("Further, [P]laintiff has

2    cited no authority demonstrating that, insofar as such misconduct violated only Title II,

3    that Congress's purported abrogation of sovereign immunity is nevertheless valid.

4    Without such binding authority, the court cannot find that Congress validly abrogated

5    sovereign immunity."). Consequently, Do's Title II claim (Claim 1) must be dismissed.

6              2.   Title V of the ADA is not a valid abrogation of sovereign immunity in
                   this context.

7    Do's Claim 3 alleges a violation of Title V of the ADA, 42 U.S.C. § 12203(b).[4]

8    Because the determination of whether Title II of the ADA validly abrogates Eleventh

9    Amendment immunity "necessarily applies to claims brought under Title V of the

10   ADA,. . . where, as here, the claims are predicated on alleged violations of" Title II, Do's

11   Title V claim is also barred by the Eleventh Amendment. *Demshki v. Monteith*, 255 F.3d

12   986, 988 (9th Cir. 2001). This Eleventh Amendment immunity precludes Do's Title V

13   claim against all of the University Defendants. As such, Do's Claim 3 must be dismissed

14   as against ABOR and to the extent that Do seeks damages other than prospective

15   injunctive relief against the Individual Defendants.

16   **III.   Do's Claim 4 fails because A.R.S. § 41-1492.02 does not provide a cause of
17          action against ABOR.**

18   Do's Claim 4, based on the Arizonans with Disabilities Act, A.R.S. § 41-1492.02

19   ("AzDA"), is subject to dismissal for the additional reason that § 41-1492.02 does not

20   authorize a claim against ABOR. Claim 4 is premised on the theory that ASU is a "public

21   accommodation" within the meaning of the AzDA. Because ASU does not satisfy the

22   definition of "public accommodation" under the AzDA, Claim 4 fails as a matter of law.

23   Under A.R.S. § 41-1492.02, "[n]o individual may be discriminated against on the

24   basis of disability in the full and equal enjoyment of the goods, services, facilities,

25

26   _____
     [4]    Do's complaint refers to her ADA retaliation claim under 42 U.S.C. § 12203 as a
27   "Title IV" claim. (Doc. 14 at 19.) The case law refers to this provision as Title V, and
     Defendants refer to it the same way throughout this motion. *See, e.g.*, *Demshki v.*
28   *Monteith*, 255 F.3d 986, 988 (9th Cir. 2001) (referring to § 12203 as "Title V of the
     ADA").

privileges, advantages, or accommodation of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation." In other words, the statute applies to places of public accommodation. The definition of "public accommodation" in the AzDA includes a "[n]ursery, elementary, secondary, undergraduate or postgraduate private school or other place of education." A.R.S. § 41-1492(11)(j) (emphasis added). The definition of "public accommodation" only encompasses "undergraduate and postgraduate *private* schools," not public universities. *Id.* ASU is a public university, not a private school. Thus, it is not a place of public accommodation for purposes of the AzDA.

This understanding is confirmed through AzDA's relationship to the ADA. As the Ninth Circuit has noted, "the state provisions under [AzDA] mirror Title III of the ADA" and, as such, "the same analysis applies to both the federal and state claims." *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 n.3 (9th Cir. 2019). Title III of the ADA only applies to private entities. *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). Specific to this context, "[e]ntities subject to Title III include private schools, but not public ones." *DeBord v. Bd. of Educ. of Ferguson-Florissant Sch. Dist.*¸126 F.3d 1102, 1106 (8th Cir. 1997). Again, ASU is a public university. That takes it outside the ambit of both Title III of the ADA and § 41-1492.02 of the AzDA. AzDA is clear: § 41-1492.02 does not apply to ABOR. Claim 4 must be dismissed.

## IV.    Do's defamation claim (Claim 10) fails because she points to no defamatory statements.

Do's Claim 10 for defamation is subject to dismissal for the additional reason that Do has not alleged any publication capable of defamatory meaning. Do asserts that the University Defendants defamed her in a performance evaluation of her clinical coursework. (*See* FAC ¶¶ 12, 52-53, 119-121.)

A private person suing for defamation must prove a defendant (1) published a false and defamatory statement concerning the person, (2) knew the statement was false and

1  defamed the other, and (3) acted in reckless disregard of these matters or negligently
2  failed to ascertain them.  *Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 315 (Ariz.
3  1977). "Whether a statement is capable of defamatory meaning is a question of law for
4  the court." *Dube v. Likins*, 167 P.3d 93, 106 ¶ 43 (Ariz. App. 2007).

5  Generally, "[a] person who seeks an academic credential and who is on notice that
6  satisfactory performance is a prerequisite to his receipt of that credential consents to frank
7  evaluation by those charged with the responsibility to supervise [them]." *Kraft v. William
8  Alanson White Psychiatric Found.*, 498 A.2d 1145, 1149 (D.C. App. 1985).  In other
9  words, evaluations of student performance are generally non-actionable statements of
10 opinion. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 74-75 (4th Cir. 2016).

11 In *Kerr*, for example, a plaintiff based a defamation claim on statements made in
12 an evaluation of his student teaching.  *Id.* at 74.  That evaluation called the plaintiff
13 "dishonest and unethical," concluded he was "unqualified to become a teacher," and was
14 'unsatisfactory' in numerous areas." *Id.* at 75.  The Fourth Circuit concluded that, in the
15 context of an academic evaluation, these conclusions were not capable of defamatory
16 meaning because even though the plaintiff "might disagree with them," the statements in
17 the evaluation were non-actionable statements of opinion.  *Id*; *see also Redding v. Nova
18 Southeastern Univ., Inc., Coll. of Osteopathic Med.*, No. 14-60545-CIV, 2015 WL
19 13567452, *7 (S.D.Fla. 2015).  This rule makes sense—were it otherwise, "schools would
20 no doubt be overrun with defamation claims, as one critical purpose of evaluating and
21 grading students is to *specifically determine* which students are fit for the practice." *Zwick
22 v. Regents of the Univ. of Mich.*, No. 06-12639, 2008 WL 11356797, *2 (E.D. Mich.
23 2008) (emphasis in original).

24 Here, Do's defamation claim is premised on an evaluation of her performance
25 during a clinical rotation as part of her coursework and an alleged statement made during
26 discussion of her conduct in that course that "she had exhibited gross incompetence as a
27 nursing student."  (FAC ¶ 53.)  But these types of assessments are the precise type of

28

academic assessments that are unactionable under defamation law.  *Kerr*, 824 F.3d at 75. Because the evaluation is not capable of defamatory meaning, Do's defamation claim fails and must be dismissed.

**V.    Do's contract-related claims (Claims 11, 12, and 13) fail because she does not adequately allege the existence of a contract.**

Do's claims for breach of contract (Claim 11), breach of the implied covenant of good faith and fair dealing (Claim 12), and tortious interference with contract (Claim 13) fail for the additional reason that Do has not pointed to a concrete contractual provision that she alleges was violated.  Absent a concrete provision, she cannot maintain her claims.

**A.  Breach of contract and breach of the implied covenant (Claims 11 & 12).**

Do alleges that she had a "binding contract" with ABOR under which ABOR was contractually obligated to "provide education and guidance" towards earning her degree. (FAC ¶ 126.)  She further alleges that ASU made certain "promises" in promotional materials and guides, that she would be assigned a faculty mentor, and that the nursing program offered "flexible preceptorships and coursework to provide each student with a learning experience that meets their needs."  (*Id.* ¶ 127.)

"[A] student's claim for breach of contract must be premised on a specific contractual undertaking by the university." *Figueroa v. Point Park Univ.*, 553 F.Supp.3d 259, 267 (W.D.Pa. 2021).  "General policy statements and broad and unspecified procedures and guidelines will not suffice.  *Nungesser v. Columbia Univ.*, 169 F.Supp.3d 353, 370 (S.D.N.Y. 2016) (internal quotation marks omitted).  Further, "expressions of intention, hope or desire" do not form the basis of a breach of contract claim.  *Oyoque v. DePaul Univ.*, 520 F.Supp.3d 1058, 1064 (N.D. Ill. 2021) (internal quotation marks omitted).

Do's vague allegations that ABOR breached a general contract to provide education, without reference to a specific contractual undertaking is insufficient to state a claim.  *Figueroa*, 553 F.Supp.3d at 278.  Her allegations based on marketing materials

and guides are similarly insufficient as they are no more than general policy statements, *Nungesser*, 169 F.Supp.3d at 370, or "expressions of intention, hope or desire," *Oyoque*, 520 F.Supp.3d at 1064 (internal quotation marks omitted).

In *Oyoque*, for example, the court rejected a breach of contract claim based on a statement in a student handbook that pronounced:

> The Office of Student Involvement fosters student learning and success by providing opportunities for engagement through a wide variety of campus activities and organizations, holistic and intentional advising of student leaders, and the development of purposeful and mutually beneficial partnerships across the University and City of Chicago to maximize access to resources for a rich DePaul campus experience.

*Id.* This was deemed an "expression of intention—an aspirational statement—rather than a statement aimed at obligating or committing the University to particular actions." *Id.* The *Oyoque* court similarly held that the university's "marketing materials are not among the terms of the contract between the universities and their students." *Id.* at 1065. Thus, "none of the facts alleged by the plaintiffs amounts to a concrete contractual promise" sufficient to maintain a breach of contract claim. *Id.*

The same is true here. Do points to her program's website as support for her claims, (FAC ¶¶ 127, 140), but ASU's marketing materials "are not among the terms of the contract between the universities and their students." *Id*. at 1065. Moreover, despite Do's assertion that ASU's intention to assign her a faculty mentor is a "promise," (FAC ¶¶ 127, 140), it is nothing more than a general policy statement, *Nungesser*, 169 F.Supp.3d at 370.

At bottom, Do falls well short of identifying "specifically designated and discrete promises." *Nungresser*, 169 F.Supp.3d at 370 (quotation marks in original). Instead, she can only point to "unenforceable expressions." *Oyoque*, 520 F. Supp. 3d at 1064. Because "none of the facts alleged amounts to a concrete contractual promise," Do's breach of contract claim fails. *Id.* at 1065.

Similarly, because the covenant of good faith and fair dealing "exists by virtue of a contractual relationship," Do's failure to point to a specific contractual relationship with ASU is fatal to her breach of the covenant claim. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 ¶ 59 (2002); *David v. Neumann Univ.*, 187 F.Supp.35, 554, 561 (E.D.Pa. 2016) ("Without an identified contractual obligation, the Court is unable to look at the University's actions or inactions to determine whether it has in fact adhered to those contractual duties in good faith. . . . Therefore, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing as well."). Because Do has failed to point to a concrete promise, her Claims 11 and 12 fail as a matter of law.

**B.  Tortious interference with contract (Claim 13).**

In the same vein, Do's tortious interference with contract claim requires that she show:

> (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferor; (3) intentional interference inducing or causing a breach; (4) resultant damage to the party whose relationship has been disrupted; and (5) improper action on the part of the defendant.

*Bar J Bar Cattle Co., Inc. v. Pace*, 763 P.2d 545, 547 (Ariz. App. 1988). Her failure to point to a specific, concrete contractual provision that she alleges was interfered with and breached is fatal to this claim as well. *Id.*

Do's Claim 13 fails for the additional reason that ABOR "cannot be held liable in tort for intentional interference with its own contract," *Campbell v. Westdahl*, 715 P.2d 288, 294 (Ariz. App. 1985), nor can its employees tortiously interfere with its contracts, *Payne v. Penzoil Corp.*, 672 P.2d 1322, 1327 (Ariz. App. 1983) ("The appellees argue that since they were acting for [their employer] they were [their employer], and that they could not interfere with their own contract. We agree."). Claim 13 fails as a matter of law and should be dismissed in its entirety.

1
2

**VI.    The Individual Defendants should be dismissed from this case in both their official and individual capacities.**

3
4
5
6
7
8

As discussed above in Section II, the Individual Defendants are entitled to Eleventh Amendment immunity for acts taken in their official capacities. *Pena*, 976 F.2d at 473. Thus, to the extent Do bases her claims on the Individual Defendants' official acts, those claims would be barred by the Eleventh Amendment. Additionally, the claims asserted against the Individual Defendants suffer from other infirmities that warrant dismissal.

9
10

**A. The federal claims against the Individual Defendants in their official capacity are duplicative of the claims against ABOR.**

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Do asserts two federal claims against the Individual Defendants in their official capacities: Claim 3 under Title V of the ADA and Claim 6 under the Rehabilitation Act. She also asserts both of these claims against ABOR. An action against an individual in their official capacity is "only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As such, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* at 166. Where, as here, both the government entity (ABOR) and its officials (the Individual Defendants in their official capacities) are sued, "the claims against the individuals are duplicative and should be dismissed." *Vance v. Cnty. of Santa Clara*, 928 F.Supp.993, 996 (N.D.Cal. 1996); *see also Rohde v. Okla. ex rel. Bd. of Regents of Univ. of Cent. Okla.*, No. CIV-20-1243-G, 2021 WL 4495908, *3 n.5 (dismissing ADA claims against individuals in their official capacities as duplicative). Do's Claims 3 and 6 against the Individual Defendants are duplicative of her claims against ABOR. These claims against the Individual Defendants provide no further remedy or avenue to recovery for Do than her claims against ABOR. Claims 3 and 6 against the Individual Defendants should be dismissed.

27
28

**B. With no federal claims asserted against the Individual Defendants, the state law claims against the Individual Defendants should be dismissed.**

If the Court dismisses the federal claims against the Individual Defendants (Claims 3 and 6), the pendant state law claims against the Individual Defendants in both their individual and official capacities should be dismissed as well. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state law claims."); *see also Timeline, Inc. v. Proclarity Corp.*, No. C05-1013 JLR, 2007 WL 1574069, *9 (W.D. Wash. 2007) (noting that courts may decline "to exercise supplemental jurisdiction under § 1367(c)(3) over state-law claims against a defendant after all federal claims against that defendant have been dismissed, even though federal claims remain[] against other defendants").

**C. This Court should not exercise supplemental jurisdiction over the Individual Defendants in their individual capacities.**

Regardless of whether the federal claims against the Individual Defendants in their official capacities are dismissed, this Court should dismiss the state law claims against the Individual Defendants in their individual capacities because there is no basis to exercise supplemental jurisdiction over the Individual Defendants in their individual capacities. Because there are no federal claims asserted against the Individual Defendants in their individual capacities, there are no claims against the Individual Defendants *as individuals* over which this Court has original jurisdiction. As such, the state law claims against the Individual Defendants in their individual capacities should be dismissed. *Acri*, 114 F.3d at 1001; *cf. Rivera-Tirado v. Autoridad de Energia Electrica*, 663 F.Supp.2d 36, 41 (D.P.R. 2009) (noting that supplemental jurisdiction over state law claims against government officials in their individual capacities was only authorized because "[t]he individual defendants are sued in their individual capacity under federal law.").

1

2

**VII.    Defendants Day and Bednarek must be dismissed from Do's negligence claim (Claim 9) because they did not owe a duty to Do.**

3

4

5

6

7

8

Do's Claim 9 against Defendants Day and Bednarek fails for the additional reason that Do cannot establish all elements of her negligence claim.  An essential element of a negligence claim is the presence of a "duty requiring the defendant[s] to conform to a certain standard of care." *Noriega v. Town of Miami*, 407 P.3d 92, 98, ¶ 23 (Ariz. App. 2017).  Where no duty exists, a defendant cannot be held liable for negligence.  *Gipson v. Kasey*, 150 P.3d 228, 230-31, ¶ 11 (Ariz. 2007)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

"Duties of care may arise from special relationships based on contract, family relations, or conduct undertaken by the defendant," as well as "from the nature of the relationship between the parties."  *Id.* at 230-31, ¶¶ 18, 20.  One such relationship is the student-school relationship, which "can impose a duty within the context of the relationship."  *Monroe v. Basis Sch., Inc.*, 318 P.3d 871, 873, ¶ 5 (Ariz. App. 2014). However, under Arizona law, this duty is owed by the school, not individual instructors. *See Unknown Party v. Ariz. Bd. of Regents*, No. CV-18-01623-PHX-DWL, 2021 WL 1967392, *6-12 (D. Ariz. 2021).  As the court recognized in *Unknown Party*, the line of Arizona cases recognizing a school's duty to its students does not extend to individual actors at that school.  *Id.* at *6 ("Doe's claim fails because he has not established that Arizona law actually supports the recognition of a duty of care under these circumstances.").  Indeed, this "lack of authority is significant, given that [Do] has the burden to show the existence of the duty."  *Id.* at *7 (*quoting Boisson v. Ariz. Bd. of Regents*, 343 P.3d 931, 938 (Ariz. App. 2015)).

23

24

25

26

27

The same is true here.  Because the applicable duty arises "pursuant to the student-*school* relationship," and because there is no "Arizona appellate case recognizing (or suggesting) that individual university officials owe a duty of care" in this context, Do's Claim 9 against Defendants Day and Bednarek fails and should be dismissed.  *Unknown Party*, 2021 WL 1967392 at *7.

28

1     Do attempts to save this claim by alleging, in the alternative, that Day and

2  Bednarek voluntarily undertook a duty of care.  (FAC ¶ 114.)  But such a duty is similarly

3  unsupported under Arizona law.  *Unknown Party*, 2021 WL 1967392, *10-11 (analyzing

4  and rejecting the voluntary assumption argument in the university context).  Indeed, a key

5  component of a voluntary assumption of duty is that there is "no independent obligation"

6  to the plaintiff and that the defendant "gratuitously volunteer[ed] to perform an act

7  intended to protect a third party." *Id.* at *11.  But, as in *Unknown Party*, Do alleges she

8  had a preexisting relationship with the University Defendants that obligated them to

9  provide certain accommodations.  (*See, e.g.*, FAC ¶¶ 59-67, 76-81, 125-144.)  As such,

10  Do's negligence claim against Day and Bednarek fails regardless of which theory Do

11  relies on.

12  **VIII.   Punitive damages are unavailable.**

13     Do seeks punitive damages "on account of the Individual Defendants'" conduct

14  "taken in their individual capacities."  (FAC at 30.)  Do alleges no cause of action that

15  would entitle her to punitive damages and this component of her claim should be

16  dismissed.

17     "[P]unitive damages may not be awarded . . . in suits brought under [Title II] of

18  the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189

19  (2002).  Similarly, punitive damages are not available for ADA retaliation claims.

20  *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009).

21     Additionally, "[n]either a public entity nor a public employee acting within the

22  scope of his employment is liable for punitive or exemplary damages."  A.R.S. § 12-

23  820.04; *see also Spears v. Ariz. Bd. of Regents*, 372 F.Supp.3d 893, 925-26 (D. Ariz.

24  2019).  Do's request for punitive damages is barred by black-letter law.

25     Do attempts to evade this bar as to the Individual Defendants by basing her request

26  on actions taken by these defendants "in their individual capacities." (FAC at 30.) But

27  whether an action was taken in an employee's official or individual capacity is irrelevant

28

for the purposes of § 12-820.04.  Instead, the relevant distinction is whether the Individual Defendants were "acting within the scope of [their] employment."  A.R.S. § 12-820.04.  The Individual Defendants were acting within the scope of their employment, and nothing in Do's amended complaint suggests otherwise.  Indeed, at times, Do relies on the fact that the Individual Defendants were acting in the scope of their duties to attempt to impute liability to ABOR.  (*See, e.g.*, FAC ¶ 41.)  Similarly, an assertion that the Individual Defendants were acting beyond the scope of their employment is belied by the fact that, for multiple claims, Do must rely on vicarious liability to allege those claims against ABOR.  But that liability only attaches if the employee was acting within the scope of their employment.  *Smith v. Am. Express Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1170-71 (Ariz. App. 1994) ("[A]ccording to the doctrine of *respondeat superior*, an employer is vicariously liable *only* for the behavior of an employee who was acting within the course and scope of his employment.") (emphasis added, internal quotation marks omitted); *see also Quade*, 2015 WL 10939902 at \*5-6 (denying leave to amend complaint because "[a]ccording to Plaintiff's own factual allegations, [state employees'] conduct was within the scope of their employment").  Do's attempt to evade § 12-820.04 fails.  Her request for punitive damages should be dismissed.

## IX.  Attorneys' fees.

The University Defendants provide notice that they intend to seek attorneys' fees where authorized by law, including under A.R.S. §§ 12-341 and 12-341.01.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Do's claims against the University Defendants with prejudice.  The Court should dismiss the Complaint in its entirety as to the University Defendants because Do failed to follow the administrative appeal process and did not exhaust her administrative remedies.  Alternatively, Claims 1, 3, 4, and 7-13, as against ABOR and the Individual Defendants in their official capacities are all barred by the Eleventh Amendment.  Claim 4 must be dismissed for the additional

1   reason that it relies on a flawed reading of the relevant statute.  Claim 10 fails because Do

2   points to nothing capable of defamatory meaning. Claims 11-13 fail because she has not

3   adequately pleaded a breach of a specific contractual provision.  Claim 13 further fails

4   because neither ABOR nor its employees can interfere with their own contract.  Further,

5   the Individual Defendants should be dismissed from Claims 3 and 6 because they are

6   duplicative of the claims against ABOR.  The remaining state law claims (Claims 7-10,

7   13) should be dismissed against the Individual Defendants in their individual capacities

8   because there is no claim against them in their individual capacities over which this Court

9   has original jurisdiction.  Finally, because the Individual Defendants did not owe a duty

10  to Do, they must also be dismissed from her Claim 9.

11          DATED this 19th day of April, 2022.

12                                          OSBORN MALEDON, P.A.

13

14                                          By  s/ Kristin L. Windtberg
                                                Mary R. O'Grady
15                                              Kristin L. Windtberg
                                                Joshua J. Messer
16                                              2929 North Central Avenue, 21st Floor
                                                Phoenix, Arizona 85012-2793

17                                          Defendants Arizona Board of Regents, Dr.
                                            Kimberly Day, Dr. Salina Bednarek and Joshua
18                                          Bednarek, Dr. Margaret Morris and Phillip
                                            Morris, Candace Keck and Jonathan Keck
19

20                          **CERTIFICATE OF SERVICE**

21          I hereby certify that on April 20, 2022, I will mail a copy of the attached

22  document by first-class mail to the Honorable John J. Tuchi, United States District

23  Court, Sandra Day O'Connor U.S. Courthouse, Suite 525, 401 West Washington Street,

24  SPC 83, Phoenix, Arizona 85003-2151.

25                                           s/ Patricia D. Palmer
    9422804

26

27

28